# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOSEPH JACKSON, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 20-CV-782 |
| | : | |
| NORTHAMPTON COUNTY PRISON, | : | |
| *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

**SCHILLER, J.**                                                                                               **APRIL 10, 2020**

In a prior Memorandum and Order filed on February 21, 2020, the Court granted Plaintiff Joseph Jackson leave to proceed *in forma pauperis*, dismissed with prejudice his claim against Defendant Northampton County Prison ("NCP") because it is not subject to suit under 42 U.S.C. § 1983, and dismissed the claim against Defendant Prime Care without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because Jackson's allegations failed to state a plausible constitutional claim. Jackson was granted leave to file an amended complaint if he was able to cure the defects the Court identified in his original pleading. Jackson filed an Amended Complaint ("AC") on March 16, 2020. (*See* ECF No. 8.) Named as defendants in the new pleading are Prime Care[1]

---

[1] On the original form Complaint, Jackson checked the box indicating that he intended to sue Prime Care in its "official" capacity. The Court disregarded the check box for purposes of screening the original Complaint. Jackson has again checked the box indicating that he intends to sue Prime Care in its official capacity. As Jackson has failed to cure the defects identified previously by the Court about his claim against Prime Care, the check box will again be disregarded for purposes of § 1915 screening.

and Jane Doe, an unknown medical provider who treated Jackson at NCP.[2] For the following reasons, the AC will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.  FACTUAL ALLEGATIONS

Jackson's original factual allegations were straightforward, and he adds little additional factual support for his claims in the AC. He alleges that he was involved in a fight with another inmate on November 19, 2019, during which he broke a knuckle in his dominant hand. (ECF No. 8 at 5.)[3] An initial x-ray on November 22, 2019 came back negative and Defendant Jane Doe informed him that nothing was wrong with his hand. (*Id.*) She told him that if his hand remained swollen he could ask for another x-ray in two weeks. (*Id.*) Jackson's hand remained swollen and he requested another x-ray. The second x-ray, performed in early January 2020, showed the knuckle was broken. (*Id.*) On January 13, 2020, Jackson was seen by an orthopedist and was told that the delay in getting treatment for the break meant that it would not heal properly, and that his hand would never look the same.[4] (*Id.*) Jackson seeks $50 million in damages for pain and suffering because his knuckle still hurts, it "healed into a scar," and he has lost strength in his dominant hand. (*Id.* at 5-6.)

## II.  STANDARD OF REVIEW

Because Jackson has been granted leave to proceed *in forma pauperis* 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the AC if it fails to state a claim.

---

[2] While Jackson refers to Jane Doe in the caption of the AC as a "doctor," his substantive allegations mention only a "PA". The Court will assume that the "PA" is a physician's assistant and is the Jane Doe identified in the caption.

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

[4] In the original Complaint, Jackson asserted that he had received physical therapy for the injury. (ECF No. 3 at 4.) He omits that allegation from the AC.

Whether the AC fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the AC contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Jackson is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). While Jackson cites the Fifth, Eighth and Fourteenth Amendments (ECF No. 8 at 3), he again asserts claims based on deliberate indifference to a serious medical need while he was a pretrial detainee at NCP. Accordingly, the Court construes his claims as arising under the Fourteenth Amendment.

#### A. Claim Against Prime Care

The deliberate indifference claim against Prime Care in the original Complaint was dismissed without prejudice because Jackson failed to allege Prime Care had "'a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s].'" (ECF No. 6 at 4-5 (citing *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003); *Bd. of the Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997); *Lomax v. City of Philadelphia*, Civ. A. No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy

3

exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted)). The Court held that Jackson

> has not identified any policy or custom of Prime Care that caused him to be deprived of proper care. His allegations that the initial x-ray of his knuckle was negative, but a subsequent x-ray showed a fracture, do not alone establish either deliberate indifference or the plausible existence of a policy or custom adopted by Prime Care that would give rise to a claim against the entity. Accordingly, Jackson has not stated a claim against Prime Care and the claim against it must be dismissed.

(*Id.* at 5.) Jackson was granted leave to amend his claim against Prime Care if he was able to cure the defect the Court identified and "state a plausible claim based on a policy or custom." (*Id.*)

Jackson's AC failed to cure the defect previously identified by the Court. He makes no allegations that Prime Care had a policy or custom to be deliberately indifferent to the serious medical needs of inmates or that such a policy caused his injury. Indeed, other than list Prime Care in the caption of the AC, Jackson makes no allegation concerning Prime Care other than that Defendant Jane Doe was its employee. (ECF No. 8 at 2.) For this reason, the claim against Prime Care is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Having afforded Jackson the opportunity to amend his claim to cure the previously identified defect, and it appearing that further amendment would be futile, the claim is dismissed with prejudice. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (recognizing that a district court may deny leave to amend where attempt would be futile).

### B. Claim Against Jane Doe

Jackson's claim against Jane Doe is based on the medical provider's informing him that his initial x-ray was negative, and nothing was wrong with his hand. These allegations also fail to assert a plausible claim.

The Court previously explained to Jackson that, to assert a plausible claim of deliberate indifference to a serious medical need, a prisoner must allege facts indicating that a prison official knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).[5] "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Jackson fails to allege that Jane Doe was deliberately indifferent. He acknowledges that he received treatment in the form of an x-ray within three days after the injury occurred. While Jane Doe allegedly told him the x-ray result was normal, she also offered him follow-up treatment if his hand injury did not improve within two weeks. Thus, he has not alleged that she denied him care for his broken knuckle. While Jackson asserts he had to wait an additional two

---

[5] Although *Farmer* was a claim asserted by the convicted prisoner under the Eighth Amendment, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

weeks after he put in his request for a second x-ray, there is no allegation that Jane Doe was responsible for the delay in care. Since there is no assertion that she was responsible for the delay, this portion of the claim is also implausible. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that a defendant must have "personal involvement in the alleged wrongs" to be liable under § 1983). Finally, Jackson does not allege that Jane Doe prevented him from receiving needed or recommended medical treatment. Rather, Jackson's claim alleges only that Jane Doe's care was negligent and that he was dissatisfied with the care he received. Because this cannot be the basis of a plausible deliberate indifference claim, this portion of the AC is also dismissed. Having afforded Jackson the opportunity to amend the deliberate indifference claim and because additional amendment would be futile, the claim will also be dismissed with prejudice.

## IV. CONCLUSION

For the reasons stated Jackson's Amended Complaint will be dismissed with prejudice and the Clerk will be directed to close this case. An appropriate Order follows.